UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

ISAIAH BENTLY                                                    PLAINTIFF

v.                                                  CIVIL ACTION NO. 5:23-CV-P32-JHM

JESSE PERRY et al.                                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for a temporary restraining order (TRO) and preliminary injunction (PI) filed by *pro se* Plaintiff Isaiah Bently (DN 10). Defendant Cookie Crews, Commissioner of the Kentucky Department of Corrections (KDOC), has responded (DN 16). Plaintiff did not file a reply. The matter being ripe, the Court will deny Plaintiff's motion as set forth below.

**I.**

In the complaint, Plaintiff stated that she identifies as a transgender woman and explains that she has taken hormone replacement therapy medication and has female breasts. Plaintiff is housed at the Luther Luckett Correctional Complex (LLCC), although she is a Graves County pretrial detainee.

The complaint detailed that Plaintiff was housed in several different county facilities before being moved to LLCC. According to the complaint, she was moved to the LLCC because Graves County could not find any place to properly house a transgender pretrial detainee in accordance with KDOC Policies and Procedures.

Plaintiff alleged in pertinent part that since being housed at LLCC she has been physically assaulted by convicted felons. She alleged that Defendants have violated her constitutional rights because despite being aware that Plaintiff was at substantial risk for being

harmed, they failed to protect her, and in fact she was injured; and that her constitutional rights were violated because she was subjected to sexual harassment and was not provided proper security. The complaint requested only a transfer to a female facility.

On initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Fourteenth Amendment claims related to being searched by male guards and being housed with men thus subjecting her to sexual harassment and assault to continue against Graves County and the KDOC. DN 15.[1]

Plaintiff's motion for a TRO/PI requests an order for her transfer to the Kentucky Correctional Institution for Women (KCIW). She states that she has been "in two physical altercations" while housed at LLCC. She attaches a Memorandum of Agreement between the KDOC and the Judge Executive for Graves County to house Plaintiff within the KDOC until she can be securely housed in a county jail or her prosecution is concluded. She also attaches a copy of a KDOC policy and procedure related to homosexual, bisexual, transgender, and intersex inmates, and an affidavit from a fellow inmate at LLCC averring that Plaintiff is followed by other inmates and "fondled."

In her response, Defendant Crews argues that Plaintiff has "failed to establish a likelihood of success on the merits because she does not provide the requisite proof." DN 16, p. 3. She argues that Plaintiff has provided only her own conclusory statements that she has twice been physically assaulted and that the affidavit by Plaintiff's fellow inmate contains no details to show that she is at substantial risk of serious harm. *Id*. at 4. Defendant Crews asserts that Plaintiff has presented no evidence of deliberate indifference to her safety and that the record

---

[1] The Court also allowed Plaintiff 30 days to file an amended complaint related to her deliberate-indifference-to-mental-health claim. *Id*.

2

establishes that Plaintiff made no complaints of physical assault, sexual harassment, or sexual assault to LLCC officials. *Id*. at 4-5.

Defendant Crews further argues that granting Plaintiff's motion would cause substantial harm to others because it would provide a precedent of providing a transfer to KCIW to any transgender inmate who demands it, thus, taking away space at KCIW for transgender inmates who are actually in danger. *Id*. at 5.

Defendant Crews also points out that Kentucky law provides the KDOC with full discretion on the housing of inmates. *Id*. at 6 (citing Ky. Rev. Stat. § 197.065). And, she asserts that court intervention in internal prison operations without an urgently compelling reason is against the public interest. *Id*. (citing *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010)).

Defendant Crews attaches the affidavit of Sherri Grissinger, the Litigation Coordinator for LLCC, who avers that she has access to information and documents maintained at LLCC. DN 16-1, p. 1. Grissinger avers that she conducted a search for any records of complaints lodged by Plaintiff related to being physically assaulted or sexually harassed or assaulted by inmates or staff while housed at LLCC. *Id*. She avers that her review of all grievances filed by Plaintiff revealed that none of them complained that she has been subject to assault or harassment; that no record of a PREA complaint filed by Plaintiff exists; and that there is no record of correspondence to the warden, an internal affairs investigation, or a disciplinary report relating to assault or harassment of Plaintiff. *Id*. at 2. Grissinger further avers that Plaintiff had five disciplinary reports, one of which charged her with "Physical Action/Force Against Another Inmate," to which Plaintiff pleaded guilty. *Id*. Finally, she avers that Plaintiff signed a conflict

3

disclaimer form stating that she had no conflict with the inmates involved in the above incident. *Id*. at 2-3.

Also attached are the disciplinary report and the conflict disclaimer. *Id*. at 4-11. That disclaimer dated December 7, 2022, states that Plaintiff was aware of no reason why she could not be housed with any inmate at LLCC at that time. *Id*. at 11.

II.

Both a preliminary injunction and a TRO are extraordinary remedies "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions." *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008). The Court must balance four factors in deciding whether to issue a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emp. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (internal quotation marks and citation omitted). The four preliminary injunction factors are "factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997). Nonetheless, the hallmark of injunctive relief is a likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("[T]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (rejecting the notion that a mere "possibility" of irreparable

injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original).

Because "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), the "'party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d. 470, 471 (8th Cir. 1994)). Additionally, motions seeking to obtain affirmative preliminary injunctive relief must be more closely scrutinized than a preliminary injunction motion which seeks to maintain the status quo. *See, e.g.*, *Russell v. Tribley*, No. 2:10-CV-14824, 2011 WL 4387589, at *10 (E.D. Mich. Aug. 10, 2011), *report and recommendation adopted*, No. 10-CV-14824, 2011 WL 4396784 (E.D. Mich. Sept. 21, 2011) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005); *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988)).

### A. Likelihood of Success

Merely because the Court has allowed Plaintiff's claims related to being searched by male guards and Defendants' alleged deliberate indifference to her safety to continue does not satisfy the requirement of showing a strong likelihood of success for purposes of granting PI/TRO relief. *See White v. Erdos*, No. 1:19-CV-01009, 2020 WL 2552933, at *2 (S.D. Ohio May 20, 2020) (explaining that to survive initial review requires only a determination that plaintiff has stated a plausible legally cognizable claim not a substantial likelihood of success) (citing *Six Clinics Holding Corp.*, 119 F.3d at 402).

Here, Plaintiff's complaint offers her own allegations that she has been sexually harassed by other inmates while at county facilities before being moved to LLCC and physically assaulted while at LLCC; her motion alleges that she has "been in two physical altercations while under the contract" between Graves County and the KDOC; and an affidavit from a fellow LLCC inmate avers that Plaintiff is followed by inmates asking her for sexual favors and that "most of the time" she is fondled when she walks in tight spaces.

Defendant Crews argues that even if a substantial risk exists, Plaintiff cannot succeed on the merits of her deliberate-indifference-to-her-safety claim because she has presented no evidence that LLCC officials acted with deliberate indifference to the risk given the complete lack of evidence that she filed any grievances, PREA complaints, or correspondence, or made other attempts to alert them of physical or sexual harassment or assault. Defendant Crews further points out that the only evidence of assaultive behavior is Plaintiff's own statements.

To succeed on a claim of deliberate indifference to her safety, Plaintiff must demonstrate not just an objective risk to her safety but also that prison officials had "a sufficiently culpable state of mind," *i.e.*, that they knew of and disregarded an excessive risk to her health or safety. *Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008). Indeed, to establish deliberate indifference, Plaintiff must show: (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner"; (2) the official "did in fact draw the inference"; and (3) the official "then disregarded that risk." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (citation and quotations omitted). As set forth above, nothing in the record establishes that LLCC officials were aware of the alleged harassment/assaults.

Moreover, the law is clear that inmates have no constitutional right to be incarcerated in any particular institution. *See Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Beard v. Livesay*,

798 F.2d 874, 876 (6th Cir. 1986). "[A] federal court only has the authority to order a State to transfer a prisoner in the rare and extreme situations where an inmate's life is in imminent or grave danger." *Henson v. Daviess Cnty. Detention Ctr.*, No. 4:16-cv-169, 2017 WL 891299, at *2 (W.D. Ky. Mar. 6, 2017) (collecting cases).

The Court finds that Plaintiff has not shown a strong likelihood of success on the merits.

### B. Irreparable Injury

Plaintiff does not show that she faces imminent harm of irreparable injury. She alleges only past inmate assaults and offer no details of those. Allegations of past behavior generally are not sufficient to satisfy this prong of the PI/TRO analysis. *See, e.g.*, *Basey v. Mooneyham*, 172 F. App'x 582, 584 (5th Cir. 2006) (denying request for preliminary injunction for transfer where prisoner only alleged that he had been previously assaulted by prison officials); *Clemons v. Wexford Health Sources*, No. 20 C 50330, 2020 WL 13816796, at *6 (N.D. Ill. Oct. 5, 2020) (denying transgender prisoner's PI motion requesting transfer to women's prison, finding that "vague references to past harm [are] insufficient to suggest that she is in imminent danger").

The Court finds that Plaintiff has not shown that she will suffer irreparable injury absent the requested transfer.

### C. Substantial Harm and the Public Interest

Finally, the third and fourth elements of the analysis also weigh against granting preliminary injunctive relief. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang*, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of

constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion (DN 10) is **DENIED**.

Date: August 30, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
      Counsel of record
4414.009